# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH LUNA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-09-886-F |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Kenneth Luna ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. §636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

Plaintiff initiated these proceedings by filing his applications seeking disability insurance benefits and supplemental security income payments in April, 2007 [Tr. 94 - 96 and 97 - 99]. He alleged that a below the knee amputation of his left leg, back problems, and difficulties in wearing his prosthesis became disabling as of April 15, 2007 [Tr. 114].

Plaintiff's claims were denied and, at his request, an Administrative Law Judge ("ALJ") conducted a January, 2009 hearing where Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 21 - 39 and 62]. In his January, 2009 decision, the ALJ found that while Plaintiff was unable to perform his past relevant work, he retained the capacity to perform other available work and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 11 - 20]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 1 - 4], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that he has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claim of Error**

The single claim of error on appeal is that "[t]he ALJ failed to properly analyze [Plaintiff's] credibility."[1] [Doc. No. 16, p. 4].

**Analysis**

Plaintiff – who was thirty-seven years old at the time of the alleged onset of his disability [Tr. 18] – "sustained a fork lift injury which resulted in a below the knee

---

[1]Unless otherwise indicated, quotations in this report are reproduced verbatim.

amputation of the left leg" in 1989 when he was nineteen years old [Tr. 14]. Nonetheless, "[h]e had a good recovery and subsequently wore a prosthesis which allowed him to return to work." *Id.* In his filing papers, Plaintiff maintained that his leg began to cause him problems in January, 2006; he had days when he was unable to wear his prosthesis, and both his leg and back caused him pain on a daily basis [Tr. 114]. He ultimately stopped working on April 15, 2007. *Id.*

Based on his review of the evidence of record, the ALJ determined that Plaintiff was severely impaired by status post below the knee left leg amputation, diabetes mellitus, and lumbar pain [Tr. 13]. He ultimately concluded Plaintiff had the residual functional capacity ("RFC")[2] to perform a wide range of sedentary work, limited by his inability to kneel and to only occasionally crouch, crawl, or reach [Tr. 14]. In considering Plaintiff's subjective complaints for purposes of assessing his RFC, the ALJ stated that

> [a]t his hearing, the claimant testified that he worked through April, 2007, for the City of Cyril. He recalled that he missed quite a bit of work during his last year due to problems with his back and left leg and that he had used all of his vacation even before March. The claimant recalled that his direct supervisor was also a personal friend and he let the claimant do the easy work and take more vacation than was allowed. The claimant recalled that his leg would swell to the point he could not put on his prosthesis and he would have to miss work.
>
> The claimant testified his left leg swells, especially with prolonged activity such as standing. The claimant testified he attends his daughter's softball games; but afterwards, he must take pain medicine for a few days. The claimant estimated that his leg swells to the point where he cannot wear his

---

[2]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

prosthesis, on average, two to four days per month. According to the claimant, he always has discomfort in his leg, but after he gets up in the morning, it continues to build. After four to five hours, the claimant testified he must take medication and lie down for relief. The claimant estimated he can sit two hours and stand one hour without difficulty. The claimant uses a cane in his right hand, as prescribed by his physical therapist. The claimant recalled that he had the onset of diabetes in January, 2006, for which he must take regular breaks for meals. He also testified that the diabetes has gradually affected his vision.

[Tr. 16 - 17].

While the ALJ found that Plaintiff's impairments could reasonably be expected to cause some of the symptoms which he described, he concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [Tr. 17]. Thus, the ALJ, as required, considered Plaintiff's allegations of disabling symptoms in order to "decide whether he believe[d them]." *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation omitted). In making this determination, an ALJ should consider factors such as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted).

5

Here, the ALJ began his explanation of the evidence upon which he specifically relied in discounting Plaintiff's credibility by contrasting Plaintiff's subjective complaints with the objective medical findings of record:

> In the instant case, the issue is not the existence of pain and swelling, but rather the degree of incapacity incurred because of it. While the claimant complains of severe pain, it does not seem reasonable to conclude from the minimal findings in evidence[3] that such could be the basis for the degree of pain alleged. He does not appear to be experiencing progressive physical deterioration which might be expected when there is intense and continuous pain. Likewise, the claimant's routine does not appear restricted by his alleged disability, but rather by choice.

[Tr. 17]. On appeal, Plaintiff does not challenge the ALJ's conclusion that Plaintiff's subjective complaints are inconsistent with the objective medical findings of record. *See Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir. 1988) ("[T]he consistency or compatibility of nonmedical testimony with objective medical evidence" is a factor on which the ALJ is entitled to rely in considering Plaintiff's subjective testimony.). The Commissioner, on the other hand, points to the ALJ's summary of the findings of the consultative examining physician [Tr. 161 - 167] as support for that determination:

> As a consultative physician, Jeff Miller, M.D., examined the claimant on June 23, 2007. The claimant related his history of a below the knee amputation to his left leg following a fork lift accident in 1989. The claimant related that since the amputation, he had a gradual increase in lower back pain, sharp in nature, and radiation of moderate to severe pain into his left leg. The claimant described increased pain with standing, walking or bending; but, improvement with medication. He also described stump pain and difficulty wearing his prosthesis at times. Dr. Miller noted the claimant's diet controlled his diabetes

---

[3]The ALJ's decision contains a thorough and detailed discussion of the medical evidence of record [Tr. 14 - 16].

6

type two. . . . The claimant's best corrected vision was 20/20. The claimant's lungs were clear, and his heart sounds had regular rate and rhythm. Dr. Miller found the claimant had adequate peripheral pulses and no evidence of claudication, edema, ulcers, or rashes. There was no evidence of focal or sensory deficits and his straight leg raising was negative bilaterally, both seated and supine. The claimant had full and normal ranges of motion of the spine. Dr. Miller observed the claimant moved about the examination room easily and ambulated with a stable gait at an appropriate speed with the use of his prosthesis. He specified the claimant had normal gross and fine manipulation. Dr. Miller found the examination of the left below the knee amputation stump showed no evidence of ulceration, swelling, or skin breakdown.

[Tr. 16, record reference omitted]. Plaintiff did not exercise his option [Doc. No. 13] to file a reply brief in order to contest the Commissioner's position on this point or to direct the court to contrary objective medical findings. Thus, Plaintiff has failed to demonstrate that the ALJ committed any error in concluding that the credibility of Plaintiff's subjective complaints – back and leg pain as well as swelling, tingling, and numbness – was diminished by the inconsistency between those complaints and the objective medical findings of record.

Next, the ALJ stated that "[i]n terms of the claimant's alleged swelling and pain in his stump, the nature appears to be intermittent at most. The treating medical records are silent concerning complaints of swelling to the point that the claimant cannot wear his prosthesis.[4] This bears upon the claimant's credibility." [Tr. 17]. Once again, Plaintiff does not challenge

---

[4]At the conclusion of his brief, Plaintiff states that "the ALJ put a great deal of emphasis on the lack of [Plaintiff's] complaints being reflected in the medical file." [Doc. No, 16, p. 7]. He then cites several occasions [Tr. 227, 235, 236, and 239] when he complained about back pain, left leg tingling, discomfort over the left thigh area, pain when sitting, and left thigh numbness [Doc. No. 16, pp. 7 - 8]. Plaintiff, however, fails to cite to any complaint about his inability to wear his prosthesis due to swelling.

7

the ALJ's credibility finding by directing the court to medical records where he complained about the swelling described by the ALJ; neither does he argue that the ALJ could not, as a matter of law, discount Plaintiff's credibility as a result of this inconsistency [Doc. No. 16, pp. 6 - 7]. Instead, he agrees with the ALJ's findings that the swelling and pain in his stump were intermittent. *Id.* The ALJ committed no error in connection with this finding.

In the same paragraph of the decision in which he concluded that Plaintiff's claimed difficulties with his prosthesis were not reflected in his treatment records and were, at most, intermittent, the ALJ continued by stating that

> [a]ccording to the claimant's adult function report, he is able to pick up around the house and cooks some meals. He is able to drive a vehicle, can shop in stores, and attends his daughter's sporting events. He also watches television and socializes (Exhibit 3E). These activities are not consistent with completely disabling impairments. Although the claimant may have some intermittent discomfort and tingling complaints, the same are not disabling to perform sedentary work.

[Tr. 17]. Citing the Tenth Circuit's decision in *Thompson v. Sullivan,* 987 F.2d 1482, 1490 (10th Cir 1993), Plaintiff argues that performing sporadic household work does not establish that a claimant can engage in substantial gainful activity [Doc. No. 16, p. 6]. He "asserts that his claim of inability to complete an eight hour workday is not inconsistent with the occasional performance of daily activities." *Id.*

With regard to Plaintiff's activities of daily living, the ALJ first concluded that Plaintiff's "routine does not appear restricted by his alleged disability, but rather by choice," and supported this finding by referencing the paucity of supporting medical evidence and by noting Plaintiff's failure to voice complaints about swelling. [Tr. 17]. He then stated that the

8

level of Plaintiff's activities[5] was not consistent with completely disabling impairments and concluded that his claimed intermittent problems – occurring two to four days a month [Doc. No. 16, p. 7] – with his prosthesis would not preclude the performance of sedentary work [Tr. 17]. In other words, the ALJ did not find, as Plaintiff argues, that he could engage in substantial gainful employment because he could perform sporadic or occasional daily activities. Rather, the ALJ found that the absence of medical findings and complaints suggested that Plaintiff's routine was not impacted by disabling impairments but by choice and that, even then, his lifestyle was not consistent with an inability to do *any* work. *Id.* No error was committed by the ALJ in this regard.

Plaintiff contends, however, "that the swelling and pain, preventing him from wearing his prosthesis, is not his only complaint. . . . [Plaintiff] stated he always experiences discomfort in his leg, which gets worse throughout the day. As the day progresses, [Plaintiff] stated he must take medication and lie down for relief." [Doc. No. 16, p. 7, record references omitted]. Plaintiff continues by citing to specific medical records [Tr. 221, 224, 226, 230, and 233] showing that Cyclobenzaprine was prescribed for Plaintiff to treat muscle spasms; the records reflect that the drug "may cause sedation." *Id.* Plaintiff then maintains that the ALJ erred as a matter of law by failing to consider the side-effects of Plaintiff's medication in assessing his credibility [Doc. No. 16, p. 7].

---

[5]Pursuant to Social Security regulations, the ALJ may consider Plaintiff's daily activities in evaluating his symptoms, including pain [Tr. 17]. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a).

The inherent deficiency in Plaintiff's argument is that he never claimed to suffer from the side-effects of this or any other medication. In summarizing Plaintiff's case at the outset of the administrative hearing, his counsel stated that when Plaintiff "starts the medication for the pain, that makes him sleepy, drowsy, unable to function any further during the day." [Tr. 26]. Plaintiff did not so testify, however, and, had he, such testimony could have further called his credibility into question because it would be contrary to the information he provided at previous stages of the claims process [Tr. 119, 144, and 154]. No error of law was committed by the ALJ.

Plaintiff also disputes the ALJ's next finding:

> Furthermore, the nature and extent of the claimant's dependence upon a cane is at issue.[6] The physical therapist suggested the claimant utilize a cane during the period the claimant was obtaining new shoes and attending physical therapy for posture correction education. None of the records from a medical doctor prescribe a cane. The treating medical records document the claimant was subsequently able to easily ambulate without assistance.

[Tr. 17].

Plaintiff's only challenge to the ALJ's finding is that "[o]n this issue, the ALJ stated none of [Plaintiff's] treating doctors prescribed a cane. (Tr. 17). However, on May 2, 2007, a physician at the USPHS Indian Hospital appears to have prescribed a cane for [Plaintiff] to use for prolonged walking. (Tr. 179, 186)." [Doc. No. 16, p. 6]. Nonetheless, as the Commissioner correctly responds, the duplicate records to which Plaintiff cites reflect that

---

[6]Plaintiff testified that he had his cane with him at the administrative hearing and that he "use[d] it most of the time" at the direction of his physical therapist [Tr. 31].

a physical therapist, not a doctor, suggested that Plaintiff use a cane, as needed, for prolonged walking [Tr. 179 and 186]. Moreover, Plaintiff does not take issue with the ALJ's remaining factual premise: after obtaining new shoes and posture education Plaintiff was able to easily ambulate, and no medical source has suggested that Plaintiff is dependent on a cane. Accordingly, Plaintiff has failed to establish that the ALJ erred by questioning Plaintiff's credibility based on his continued dependence on a cane in the absence of a continued indication of medical necessity.

The ALJ's final[7] credibility finding is as follows:

> When the claimant filed his teleclaim for disability on April 24, 2007, he reported to the interviewer that his condition first bothered him in January, 2006, but he continued to work in the same job, at the same rate of pay with no reductions in the hours worked or any changes in his job responsibilities/requirements until April 15, 2007. This directly contradicts the claimant's hearing testimony that his supervisor provided accommodation by letting him just do the easy work and take more vacation than he was allowed.

[Tr. 17]. Plaintiff did not address this finding on appeal; the undersigned's review of the record confirms the ALJ's finding that Plaintiff's interview statement [Tr. 109] directly contradicts the testimony he gave at the administrative hearing in this regard [Tr. 27 - 28].

---

[7]In connection with Plaintiff's work history, the ALJ also reiterated his finding that Plaintiff's claimed inability to wear his prosthesis due to swelling was less than credible:

> Additionally, although the claimant testified his leg would swell to the point he could not put on his prosthesis and had to miss work, the claimant did not report the same to his medical providers. Nor did he seek medical attention on those particular days his leg swelled and he could not wear his prosthesis. As such, this further darkens the claimant's credibility.

[Tr. 17].

11

The ALJ's conclusion – that Plaintiff's subjective complaints are not entirely credible – is well supported by substantial evidence. An ALJ's "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ properly and sufficiently explained the required link between the evidence of record and his finding that Plaintiff's allegations were not entirely credible. Moreover, "so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000), "a formalistic factor-by-factor recitation of the evidence" is not required in the Tenth Circuit. *Id.* Plaintiff has failed to establish that the ALJ committed any error in connection with his assessment of Plaintiff's credibility.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by May 17, 2010, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 26th day of April, 2010.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE